IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES G. RIGBY,** | ) |
| Plaintiff, | ) |
| vs. | ) CV-2011- |
| **FIA CARD SERVICES, N.A., d/b/a BANK OF AMERICA** | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT

NOW COMES Plaintiff James G. Rigby, and as his Complaint against the above-described Defendant, asserts as follows:

### PRELIMINARY STATEMENT

1. This case arises from the refusal of Defendant to investigate and remove improper credit card charges imposed on Plaintiff's credit card account. Defendant has violated the federal Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and has breached its agreement with Plaintiff by failing to properly investigate Plaintiff's dispute and failing to remove those charges as promised. Plaintiff seeks statutory and actual damages, as well as attorneys fees and costs. Plaintiff also asserts state law claims for negligence and wantonness based on the same facts and seeks compensatory and punitive damages.

### JURISDICTION AND VENUE

2. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1640(e). This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367. Plaintiff also asserts state claims as to which this Court has pendant jurisdiction. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claim occurred in this district and because the Defendant resides in this district.

## PARTIES

3. Plaintiff is an adult resident of Jackson County, Mississippi.

4. Defendant FIA Card Services, N.A., ("FIA") is a federally chartered bank with its headquarters in Wilmington, Delaware. At all relevant times, FIA owned and administered the credit card account described below and did so using the name Bank of America. This defendant is referred to herein as "Bank of America."

## BACKGROUND FACTS

5. On May 1, 2010 Plaintiff and his wife, Rhonda, attended a sales presentation presented by Grand Design concerning a vacation club membership. After being subjected to a high-pressure sales pitch and multiple representations regarding the benefits of membership, the Rigbys ultimately decided to purchase a membership package. The price was $4,995.00.

6. The representations made in the sales presentation were made by Grand Design acting as agent for Outrigger Vacation Club ("Outrigger").

7. The membership package purchased by the Rigbys provided for membership in the Outrigger Vacation Club which, according to the presentation, would provide many valuable benefits related to family vacations. Based on the verbal representations made during the presentations, many of which turned out to be false, the Rigbys agreed to purchase the membership. The Rigbys signed a "Retail Installment Contract" which provided for a one-time lump sum payment of $4,995. This amount was charged to Plaintiff's Bank of America credit card on the same day.

8. Grand Design and Outrigger, through Bank of America, were paid a lump sum amount of $4,995.00, which included a $399.00 application fee on the day of the presentation, along with $199.00 in "annual dues" for the first year on the day of the presentation.

9. Among the documents provided to the Rigbys when they purchased the membership at the presentation was a document entitled "Acknowledgments and By-Laws." That document, which was initialed by the Rigbys, states that they would receive a user name and password from Outrigger Vacation Club some time between 7 and 14 days after the membership application and the

paperwork was executed.

10. At the time they made the decision to purchase the membership, the Rigbys were not provided any written material that explained limitations that applied to the membership benefits, nor were they informed of the limitations.

11. Only after Rigbys agreed to purchase the membership, charged the purchase amount to their credit card and signed the Retail Installment Contract were they provided with any explanation of the limitations applicable to membership benefits. This came in the form of written material included in the Vacation Club "kit" which was provided after the purchase. The "kit" included various disclaimers and other fine print explaining limitations and fees associated with the club benefits. Many of these fees and limitations were not explained at the sales presentation or provided in the documents which the Rigbys signed. In fact, upon reading the material in the "kit" it became clear to the Rigbys that many of the statements made during the presentation were false and contradicted by the written limitations. These misrepresentations included the following:

    A. It was emphasized during the presentation that Rigbys' entire family and friends could use the club membership and that the membership was transferable. In fact, the paperwork presented at the sale presentation included paper that looked like a title document to be signed by members which would transfer benefits to someone else. However, the post-sale "kit" provided explained that Rigbys would have to accompany the family members or friends on the trip in order for the benefits to apply.

    B. The sales representatives used an example of a vacation that would normally cost $8,000 and stated that "you pay only $5,000 for that same trip as a member of Outrigger Vacation Club." However, the paperwork in the "kit" provided after the presentation revealed that the $8,000 for that trip would have to be paid up front, that the $8,000 would be non-refundable for any reason and that any savings would be sent to members a month or so after the trip.

 C. As part of the benefits of membership, the Rigbys were told that they would receive four "free" condo rental vacations per year. The post-sale "kit" explained, however, that members were required to pay "cleaning fees" for each condo stay. The "cleaning fees" were approximately equivalent to what the condo rental would be.

 D. The sales representatives described Outrigger as a very large club with benefits available "anywhere you wanted to go." After the purchase and reviewing the "kit" the Rigbys realized that the locations were very limited and, in fact, there were very few options available along the Gulf Coast.

 E. During the sales presentation, it was emphasized that Outrigger was not an on-line travel service and that it was superior to sites such as Travelocity because members would have access to a "real travel agent" who would "do the planning for you." It was explained that the only reason members would have to go online was to check out what the "special deals" were which the Rigbys were told would run regularly. The post-sale "kit" explained that the services were in fact provided in an on-line environment. In fact, the only way to access club benefits was through Outrigger's website and with use of a username and password, which was never provided.

 12. After reading through the limitations, the Rigbys decided that what they purchased was not consistent with what they were told and the vacation club membership was not suited for them. They were also not prepared to pay the fees that they discovered after reading all the material.

 13. Early the next day, May 2, 2010, Mrs. Rigby called Grand Designs and explained that they had decided to cancel the membership after becoming aware of the fees and limitations associated with the benefits. They were instructed to write a letter explaining exactly why they wished to rescind the membership and a decision would be made as to whether to grant the rescission. That same day, Rigby faxed a typed letter to Grand Design wherein they explained their desire to rescind the membership. In the letter, Rigby explained in detail the reasons why they wished to cancel the membership, including the limitations on the membership benefits they

discovered when reviewing the "kit."

14. Although Grand Design failed to recognize the cancellation, the Rigbys effectively rescinded the agreement in accordance with applicable state law.

15. Although Grand Design failed to recognize the cancellation, Grand Design and Outrigger also failed to provide the Rigbys with the promised benefits. The Rigbys were never provided any way to access the Vacation Club membership benefits, which were only a available on-line to members only and cannot be accessed without a username and password provided by Outrigger. No user name or password was ever provided by Outrigger despite the representations made in the "Acknowledgment and By-laws." In fact, the Rigbys received a letter in June 2010 from Outrigger explaining that no information or paperwork was ever sent to them by Grand Design, that their names were not in Outrigger's database and that it would be "impossible" for them to use any of the services that they paid for with the membership fee paid to Grand Designs.

16. Beginning in May, Plaintiff repeatedly contacted Bank of America and disputed the charge that appeared in connection with the membership fee. Written disputes were provided to Bank of America, along with detailed explanation regarding the dispute on or about May 28, 2010. Initially, Bank of America deleted the charge. However, in reliance on misinformation provided to Bank of America by Grand Designs, Bank of America reinstituted the charge on July 21, 2010. That misinformation included the false statements indicating that the Rigbys had received the benefits for which they paid. On August 3, 2010, the Rigbys supplemented their dispute to Bank of America. The Plaintiff, through written material and also over the phone, provided information to Bank of America which demonstrated that the information provided by Grand Designs was false. This false information included the June 2010 letter from Outrigger confirming that no information or paperwork was ever sent to them by Grand Design, that the Rigbys were not in Outrigger's database and that it would be "impossible" for them to use any of the services that they paid for with the membership fee paid to Grand Designs. This was conclusive proof that the Rigbys did not receive the benefits for which they were charged $4,995.00 fee.

## COUNT I
### (FCBA VIOLATIONS)

17. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

18. At all relevant times, Plaintiff held a credit card account, identified by account number ending in 6894, which was issued by and administered by Defendant.

19. With respect to said account, Defendant is a "creditor" as that term is defined at 15 U.S.C. 1602(f) and a "card issuer" within the meaning of 12 C.F.R. § 226.2(a)(7).

20. Plaintiff is a "consumer" and, with respect to said credit card account, is a "card holder" within the meaning of 12 C.F.R. § 226.2(a)(8) and (11).

21. Plaintiff's disputes of the above-mentioned unauthorized charges constitute notices of a "billing error" within the meaning of 15 U.S.C. § 1666(b).

22. Plaintiff delivered said notices of a billing error dispute within the meaning of 15 U.S.C. § 1666(a).

23. Defendant failed to comply with the requirements of the FCBA in one or more of the following ways:

    A. Failed to conduct any reasonable investigation of the dispute;

    B. Failed to comply with appropriate error dispute resolution procedures; and

    C. Failed to remove the disputed charge after receipt of information which demonstrated that Plaintiff had properly rescinded the agreement and/or had not received the benefits bargained for in connection with the charge.

24. As a proximate result of this conduct, Plaintiff has suffered actual damages.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for violations of the FCBA and award Plaintiff the following relief: actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment; statutory damages; punitive damages; costs and attorney's fees. Plaintiff further

requests such other relief as the Court deems just and proper, the premises considered.

## COUNT II
### (REQUEST FOR DECLARATORY RELIEF)

25. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

26. Pursuant to 15 U.S.C. § 1666i, all claims as defenses assertable by Plaintiff against Grand Design and Outrigger are assertable against Bank of America with respect to amounts included in the credit card balance attributable to the charge imposed in connection with the Grand Design contract.

27. Under applicable law, the Grand Design contract was rescinded and the charges placed on Plaintiff's card are wrongful.

28. There is a justicable dispute between the parties with respect to the amounts owed under the credit card agreement in connection with the Grand Design charge.

29. WHEREFORE, Plaintiff request an order declaring the following:

A. That the Grand Design contract was effectively rescinded by Plaintiff and the membership fee was due to be refunded;

B. That Plaintiff is not indebted to Bank of America for any amount associated with the charge placed on the credit card account by Grand Design;

C. That Plaintiff is due to be credited all sums incurred in connection with that charge and, to the extent any such sums have been paid, Plaintiff is owed a refund; and

D. Other such relief as the Court deems proper, the premises considered.

## COUNT III
## (NEGLIGENCE)

19. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

20. Defendant's actions taken in connection with Plaintiff's credit card account constitute negligence. Defendant also negligently failed to properly investigate Plaintiff's dispute.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for negligence and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (WANTONNESS)

21. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

22. Defendant's actions taken in connection with Plaintiff's credit card account constitute wantonness. Defendant also wantonly failed to properly investigate Plaintiff's dispute. Plaintiff's disputes of the acts and omissions described herein were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and well-being.

23. Plaintiff has suffered damage as a proximate result of the wantonness of Defendant.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS.**

                                          /s/ Kenneth J. Riemer

                                          KENNETH J. RIEMER
                                          Attorney for Plaintiff
                                          UNDERWOOD & RIEMER, PC
                                          166 Government Street
                                          Mobile, AL 36602
                                          (251) 432-9212
                                          KJR@AlaConsumerLaw.com
                                          (251) 433-7172 (fax)

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

FIA Card Services, N.A.
1100 North King Street,
Wilmington, Delaware 19884