**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JAMES G. RIGBY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:11-cv-00373-KD** |
| **FIA CARD SERVICES, N.A., d/b/a BANK OF AMERICA,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW OF FIA CARD SERVICES, N.A.,
IN SUPPORT OF MOTION TO DISMISS**

Defendant FIA Card Services, N.A. ("FIA") respectfully submits this memorandum in support of its contemporaneously filed motion to dismiss the claims asserted against it in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

After attending a promotional sales presentation for Outrigger Vacation Club ("Outrigger") hosted by Grand Design Travel ("Grand Design"), Plaintiff James G. Rigby and his wife purchased an Outrigger membership from Grand Design. Compl. ¶ 5. Plaintiff alleges that he and his wife later discovered that Outrigger's travel offers fell short of what Grand Design had promised. Compl. ¶¶ 11 and 12. Rather than pursue Grand Design to recover the purchase price for the Outrigger membership, Plaintiff sued his credit card issuer, FIA, which advanced the monies that Plaintiff authorized on his credit card to pay for the Outrigger membership.

Plaintiff asserts four claims against FIA: (1) Violation of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. Section 1666(b)(Count I); (2) Declaratory Relief premised on 15 U.S.C.

Section 1666i (Count II); (3) Negligence premised on "actions taken in connection with Plaintiff's credit card account" (Count III); and (4) Wantonness, also for "actions taken in connection with Plaintiff's credit card account" and an alleged failure "to properly investigate Plaintiff's dispute" (Count IV). As set forth in greater detail below, none of these allegations presents any actionable claim against FIA.

First, Section 1666(b) applies only to a "billing error" as the term is defined therein. Plaintiff's dispute is not a billing error because it does not involve a computational error, so Count I should be dismissed.

Second, Section 1666i does not provide an independent cause of action for a cardholder and only can be invoked where a plaintiff has set forth an actionable claim under the Truth in Lending Act, 15 U.S.C. 1601, *et seq.* ("TILA"). Since Plaintiff has no other actionable TILA claim, Count II should be dismissed.

Third, Plaintiff's negligence and wantonness claims are fundamentally flawed because Plaintiff fails to plead the requisite elements of either claim. Notwithstanding, Plaintiff cannot maintain a cause of action for either claim because no Alabama court has recognized any common law duty of care Plaintiff seeks to impose here – and for good reason. Plaintiff's tort claims attempt to make FIA (instead of the merchant) the guarantor of the quality of the services Plaintiff purchased with his credit card. Plaintiff's novel theories have no legal basis and, if accepted, would have far-reaching consequences that would result in enormous and unprecedented potential liability in providers of consumer credit. Finally, congressional intent makes clear that consumer remedies from credit card issuers are confined to specific instances of "billing errors" and Plaintiff's claim is not a billing error under the FCBA. For that reason, Plaintiff's negligence and wantonness claims fail. Thus, Counts III and IV must be dismissed.

<u>**ARGUMENT**</u>

I.      **The *Iqbal* Pleading Standard for a 12(b)(6) Motion to Dismiss.**

As the Supreme Court has recently reaffirmed, plaintiffs cannot state a claim under Rule 8 of the Federal Rules of Civil Procedure by offering "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotations omitted)). "Factual allegations must be enough to raise a right to relief beyond the speculative level[.]" *Twombly*, 550 U.S. at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the complaint pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Where the well-pleaded facts of a complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint should be dismissed. *Id*.

II.     **Plaintiff Has Failed to State a Claim Under the FCBA Because His Dispute Is Not a Billing Error Under 15 U.S.C. Section 1666(b) (Count I).**

Section 1666 of the FCBA[1] provides a mechanism for a debtor to challenge a perceived "billing error" on a credit card account statement, and it sets forth procedures that a creditor must follow in response to a properly raised "billing error" as that term is defined by the statute.  To that end, Section 1666(b) and the federal regulation interpreting it, 12 C.F.R Section 226.13, enumerate the kinds of complaints that constitute a "billing error", such as "a reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the

amount reflected on such statement" or "a computation error," etc. *See* 15 U.S.C. § 1666(b); 12 C.F.R. § 226.13(a). As one court has noted: "To trigger the creditor's obligations to investigate and verify its billing, the debtor must provide the creditor with written notice, within sixty days of the challenged statement date, in which the debtor: (1) identifies [his] name and account number; (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error; and (3) explains the obligor's belief that the statement contains a billing error." *Esquibel v. Chase Manhattan Bank,* 487 F. Supp. 2d 818, 825, (S.D. Tex. 2007), *aff'd*, 276 Fed. Appx. 393 (5th Cir. Apr. 29, 2008). Thus, in order to state a claim under Section 1666, the plaintiff must allege: (1) the existence of a billing error; (2) plaintiff's timely notification of the billing error; and (3) failure of the card issuer to comply with the procedural requirements of Section 1666." *Beaumont v. Citibank (South Dakota) N.A.*, 2002 LEXIS 5276, at *8 (S.D.N.Y., Mar. 28, 2002). *See also Binder v. Bank of Am. Corp.,* 2010 U.S. Dist LEXIS 124208, at *10 (N.D. Tex., Nov. 22, 2010) (quoting *Beaumont's* elements of Section 1666 claim). None of these elements are contained in Plaintiff's pleading, nor can they be, because Plaintiff does not specifically plead any of these elements in the Complaint. What's more, Plaintiff's claim is fatally flawed because his billing dispute is not a "billing error" as the term is defined by the statute.

Section 1666(b) defines "billing error" as:

(1) A reflection *on a statement* of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.

(2) A reflection *on a statement* of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

---

[1] The FCBA, 15 U.S.C Section 1666, is enforced by the TILA, 15 U.S.C. Section 1601- 1677, and implemented by the applicable regulation, known as Regulation Z. 12 C.F.R. §§ 226.1- 226.35. *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 818, 825 (S.D. Tex. 2007).

(3) A reflection *on a statement* of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction.

(4) A creditor's failure to reflect properly *on a statement* a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor *on a statement*.

(6) Failure to *transmit the statement* required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Board.

15 U.S.C. § 1666(b) (emphasis added).

Plaintiff's billing dispute does not fall under any of the foregoing definitions.  In fact, the Official Staff Interpretations to 12 C.F.R. Section 226.13 make clear that a credit card holder's dispute about the quality of the goods or services received is not a "billing error."  *See Beaumont*, 2002 U.S. Dist. LEXIS 5276, at *10-11 (citing 12 C.F.R. § 226.13(a)(3), Supp. I, subpt. B at 378) and *Greisz v. Household Bank (Ill.),* 8 F. Supp. 2d 1031, 1042 (N.D. Ill. 1998), *aff'd*, 176 F. 3d 1012 (7th Cir. 1999) ("[A] dispute relating to the quality of property or services that the consumer accepts is expressly excluded from the definition of 'billing error.'") (internal quotations omitted)).

Plaintiff does not dispute that he authorized Grand Design to charge him for the Outrigger membership; nor does he allege that his FIA credit card statement contained some computation error.  The Complaint makes clear that Plaintiff simply has a case of buyer's remorse; i.e., that the Outrigger membership did not live up to Grand Design's marketing of the membership.  This is nothing more than a dispute over the quality of the services that Plaintiff

02212500.1

expected to receive upon becoming an Outrigger member; but it is not a "billing error" under Section 1666.

The facts of this case are nearly identical to those in *Beaumont*, where the plaintiff purchased a buyer's group membership but soon became dissatisfied with it when he discovered that it did not provide the services that he was promised. *Beaumont*, 2002 LEXIS 5276 at *4-5. He complained to his credit card issuer, among other things, that the membership "never provided the product(s) and services that it promised and it failed to comply with its 100% unconditional refund policy." *Id.* at *4[2]  Noting that complaints about the quality of goods and services are not "billing errors," the Court dismissed the plaintiff's Section 1666 claim it did not involve a "billing error."  *Id.* at *11-13.  Here, Plaintiff similarly complains that the seller of a travel club membership falsely represented the quality of the product and services available to members.  Because Plaintiff has no billing error, FIA had no duty to investigate under Section 1666(a).

No case has adopted Plaintiff's expansive view of a "billing error" and for good reason. Holding that Plaintiff's complaints to FIA constitute a "billing error" would effectively make credit card companies guarantors of the quality of the goods and services that card holders purchase, thus providing a kind of insurance against false advertising or buyer's remorse.  There is no basis for concluding that Congress intended to impose such a broad obligation in enacting Section 1666.[3]

---

[2] The card holder further protested: "I had no way of stopping the charges before the company failed to provide the product."  *Id.*

[3] Even assuming that Plaintiff's complaints to FIA about his Outrigger membership purchase identified a "billing error," he failed to allege that he sent the proper written notice of the alleged "billing error" to FIA.  A creditor's obligations under Section 1666 to perform an investigation are triggered only when the obligor (card holder) sends the creditor proper notice of the alleged "billing error" within 60 days of receiving the first credit card statement containing the alleged

In sum, Plaintiff has no actionable Section 1666 claim because his billing dispute is not a "billing error."  Thus, Plaintiff's Section 1666 claims fail as a matter of law and should be dismissed.

### III.     Section 1666i Cannot Be Used as the Basis for a Declaratory Judgment Claim Against FIA (Count II).

"Section 1666i creates a structure under which the burden of bringing a lawsuit to collect a debt, after the cardholder has attempted and failed to obtain satisfactory resolution of a dispute, is placed on the card issuer, rather than the cardholder." *Moynihan v. Providian Financial Corp*., 2003 U.S. Dist. LEXIS 13732, *5 (D. Md. 2003) (citing *Beaumont v. Citibank*, 2002 U.S. Dist. LEXIS 5276 at *6.  However, "Section 1666i *does not* create an independent cause of action for the cardholder."  *Id.*  (Emphasis added.)  Instead, Section 1666i allows "a cardholder to assert certain claims or defenses from the underlying transaction in three circumstances: (1) as a justification for withholding payment, (2) in any lawsuit filed by the issuer to collect on the account, or, if appropriate, (3) in connection with a lawsuit brought by the cardholder . . . for a violation of the TILA." *Id.* (citing *Beaumont* at *5-6).  Consequently, unless the debtor alleges a violation of a separate TILA provision other than Section 1666i, the debtor cannot use Section 1666i as a basis to sue a credit card issuer for damages or declaratory relief.  *Id.*  "Absent such a violation, § 1666i only allows a cardholder to 'assert' a claim or defense to payment on the underlying transaction with the merchant against the card issuer by withholding payment on the

---

"billing error."  *Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (affirming summary judgment of Section 1666 claim because the card holder did not provide the card issuer notice within 60 days of receiving the first statement containing the alleged error); *see also Langenfeld v. Chase Bank USA, N.A.*, 537 F. Supp. 2d 1181, 1203 (N.D. Okla. 2008) (granting summary judgment for same reason).  Plaintiff's cursory allegation that he "delivered said notices of a billing error dispute within the meaning of 15 U.S.C. § 1666(a)" fails to provide the requisite factual allegation of compliance.  *See* Compl. ¶ 23.

credit card account up to the amount of credit outstanding for the property or services that gave rise to the dispute, plus any finance or other charge imposed on that amount."  *Id., at *5-6* (quoting *Beaumont,* at *6) (other quotations omitted).

*Beaumont v. Citibank*, discussed in Point II, *supra*, further illustrates the lack of a basis for Plaintiff's claims against FIA.  In *Beaumont*, the plaintiff sued Citibank seeking a declaration under Section 1666i that he was not liable for the disputed charges and damages arising from his purchase of a buyer's group membership.  *Beaumont,* 2002 U.S. Dist. LEXIS. 5276, at *3-4.

Citibank moved to dismiss, arguing that Section 1666i could not serve as the basis for a lawsuit against a card issuer.  *Id*., at *5.  The United States District Court for Southern District of New York agreed and dismissed the case.  *Id*., at *11-13.  In arriving at its decision, the court noted that the plain language of the statute and its implementing regulations clearly provided that a debtor could not use Section 1666i to "affirmatively" seek relief in court in lieu of a violation of some other TILA provision.  *Id*. at *18.   The court held that since the plaintiff had not pleaded a violation of some other TILA provision, his complaint failed to state a claim for relief and warranted dismissal.  *Id*. at *18-19.  *See also Moynihan v. Providian Financial Corp*., 2003 U.S. Dist. LEXIS, at *5 (D. Md. 2003) (dismissing attempt to use Section 1666i as basis for affirmative relief).

As in *Beaumont* (where the Court also found the plaintiff to have no viable Section 1666(b) claim), Plaintiff has no independent basis for asserting a violation of TILA.[4]     Under

---

[4]     Even if Plaintiff had alleged such an independent TILA claim, it would be barred by the applicable one-year statute of limitations. *See* 15 U.S.C.A. § 1640(e) (providing that statute of limitations for claims alleging a violation of TILA is one year).   Plaintiff alleges that he incurred the credit card debt in May 2010, which is more than one year before he filed the lawsuit on July 12, 2011. (See Docket Entry No. 1).

8

these circumstances, Plaintiff cannot invoke Section 1666i as a basis for a declaratory judgment claim against FIA.   Accordingly, Count II of the Complaint should be dismissed.

**IV.    Plaintiff's Claims for Negligence (Count III) and Wantonness (Count IV) Must Be Dismissed Because Neither Count Presents any Actionable Claim.**

Although his Complaint is far from a model of clarity, Plaintiff apparently contends that FIA was negligent and/or wanton in investigating his complaints of fraudulent inducement and in refusing to remove the disputed charge from his account.  As discussed below, neither claim is well pleaded or plausible, and each should, therefore, be dismissed.

**1.    Plaintiff Has Not Properly Pleaded Actionable Negligence or Wantonness.**

Under Alabama law, a plaintiff must establish the following four elements to maintain a claim for negligence or wantonness: "1) the existence of a duty on the part of the defendant owed to plaintiff; 2) the defendant's breach of that duty; 3) the existence of a causal relationship between the defendant's breach and the plaintiff's injuries; and 4) resulting injury to the plaintiff." *Maples v. Countrywide Home Loans,* 1999 U.S. Dist. LEXIS 14089, at *6 (S.D. Ala. 1999) (citing *Clark v. Floyd, 514 So.2d 1309, 1314 (Ala. 1987)*; *Jones v. Newton, 454 So. 2d 1345, 1348 (Ala. 1984)*; and *Alabama Power Co. v. Beam, 472 So. 2d 619, 627 (Ala. 1985)).  See also Edmonson v. Cooper Cameron Corp*, 374 F. Supp. 2d 1103, 1106 (M.D. 2005) (setting forth same elements of negligence and wantonness claims)(citation omitted).

Plaintiff does not allege any of the elements of negligence or wantonness.  Instead, Plaintiff takes a shotgun approach by claiming that FIA's "actions taken in connection with [his] credit card account" constitute negligence and wantonness.  *See* Compl. ¶¶ 20 and 22.    The Eleventh Circuit particularly disfavors vague, generalized "shotgun pleadings."  *See, e.g., Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997).

Indeed, a plaintiff must plead claims with clarity and precision so that the defendant will be able to frame a responsive pleading. *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).   Here, however, Plaintiff fails to allege the existence of any duty on the part of FIA that might conceivably give rise to actionable negligence, let alone a wantonness claim.   Wantonness is not just a higher level of negligence, but involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." [5]   *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994) (emphasis in original)).   Indeed, the Complaint's reference to FIA's alleged "acts and omissions" renders the pleading utterly devoid of any allegation that might even remotely suggest a viable wantonness claim.

### 2.    FIA Owes No Common Law Duty to Investigate Disputed Credit Card Charges.

Plaintiff's negligence and wantonness claims are fatally flawed because, as a matter of law, FIA owes no common law duty to Plaintiff to investigate his complaints of fraudulent inducement, much less a duty to remove a "disputed" charge on his account.   In Alabama, the existence of a duty is strictly a legal question that is proper for determination by the court. *Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 937 (Ala. 2006).   Alabama courts have consistently held that lenders <u>do</u> <u>not</u> owe a generalized duty of care to their customers/borrowers. *See Flying J Fish Farm v. People's Bank of Greensboro*, 12 So. 3d 1185, 1191 (Ala. 2008) (holding that lender did not owe borrower a duty of care that would give rise to a negligence claim); *Armstrong Business Services v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001) (holding

---

[5]  Wantonness is defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."   <u>Ala. Code</u> §6-11-20(b)(3).   Plaintiff parrots the definition but

that lender did not owe borrower duty of care that would give rise to a negligence or wantonness claim); *Spriggs v. Compass Bank*, 742 So. 2d 178 (Ala. Civ. App. 1997) (lender did not owe a duty of care to a borrower to notify the borrower of an insurance cancellation, despite practice of providing similar notices to other borrowers); *Cahaba Seafood, Inc. v. Central Bank*, 567 So. 2d 1304 (Ala. 1990) (outside the provision of a contract, lender owed no duty to lend money to borrower); *Tharp v. Union Bank*, 364 So. 2d 355 (Ala. Civ. App. 1978) (bank had no duty, outside the terms of the contract, to lend money or extend additional loans to prospective borrower).

Moreover, no Alabama court has ever recognized a common law duty of a credit card issuer to exercise reasonable care in investigating cardholder complaints of fraudulent inducement or to otherwise reimburse a card holder that claims to be a victim of a scam. Indeed, the imposition of such a duty on FIA would contradict a long line of Alabama precedents holding that lenders do not owe a duty of care to a borrower who is a contracting party in an arm's length transaction. *See Armstrong*, 817 So. 2d at 680.

Because Plaintiff cannot, as a matter of law, allege any facts establishing that FIA owed him any duty of care, Plaintiff's claims for negligence and wantonness must be dismissed, pursuant to Rule 12(b)(6).

### 3. The Legislative Remedies for Credit Card Disputes Are Sufficient.

Just as Alabama courts have not imposed on credit card issuers a generalized duty of care to customers, neither has Congress. Instead, Congress has enacted detailed consumer protection laws requiring credit card companies to investigate consumer complaints in specific circumstances and provided a civil cause of action for violations of the FCBA. *See* 15 U.S.C.

provides no facts to support it.

§1640.  As noted above, the FCBA provides a remedy to consumers whose credit card issuers fail to investigate customer complaints of "billing errors" under certain limited circumstances. 15 U.S.C. §1666, *et seq*

As detailed in Point II, *supra*, Plaintiff's complaints to FIA did not present a "billing error" under Section 1666.  The fact that Congress has recognized a specific duty to investigate customer complaints concerning billing errors, as opposed to a generalized duty to investigate any other billing dispute, counsels against altering this carefully balanced remedial scheme by loading on top of it a newly-fabricated – and legally unprecedented - common law negligence duty.

Accordingly, Plaintiff's negligence and wantonness claims (Counts III and IV) should be dismissed.


## CONCLUSION

For all of the foregoing reasons, FIA respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.


Respectfully submitted,

Dated:  August 23, 2011


/s John David Collins
John David Collins
Maynard Cooper & Gale PC
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL  35203
Direct:  205-254-1104
Direct Fax:  205-714-6404
jcollins@maynardcooper.com

02212500.1

and

Kathleen H. Dooley
(Applying *Pro Hac Vice*)
Angela H. Zimmern
(Applying *Pro Hac Vice*)
McGuireWoods LLP
201 North Tryon Street, Suite 2900
Charlotte, North Carolina 28202
Telephone: 704.343.2347
Facsimile: 704.373.8935
Email:  kdooley@mcguirewoods.com
Email: azimmern@mcguirewoods.com


*Attorneys for Defendant*
*FIA Card Services, N.A.*


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kenneth J. Riemer, Esq.
Underwood & Riemer, PC
166 Government Street, Suite 100
Mobile, AL  36602


/s John David Collins_____
OF COUNSEL

13

02212500.1