**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| **JAMES G. RIGBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CV-2011-373-KD-M** |
| | ) | |
| **FIA CARD SERVICES, N.A., d/b/a** | ) | |
| **BANK OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT FIA CARD SERVICES, N.A.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant FIA Card Services, N.A. ("FIA"), respectfully submits this Reply Memorandum in response to Plaintiff's Opposition ("Opposition") to FIA's Motion for Summary Judgment. As detailed below, FIA is entitled to summary judgment on all counts, and the Complaint should be dismissed with prejudice.

As a fundamental matter, Plaintiff has not disputed any of FIA's Statement of Undisputed Facts so they should all be deemed admitted. Moreover, Plaintiff has no legally sustainable argument that warrants denial of FIA's Motion. For his Fair Credit Billing Act ("FCBA") claim, Plaintiff places undue reliance on the

Eleventh Circuit Court of Appeals' decision in this case[1] which focused on Plaintiff's pleadings, as opposed to the *facts* adduced through discovery.  Thus, the Court of Appeals' analysis is clearly confined to the pleading standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and not on the summary judgment standard set forth in Rule 56.

Plaintiff's Opposition is premised on two incorrect assertions, namely that (a) FIA investigated the dispute "indefinitely" in violation of the FCBA's timing requirements, and (b) FIA determined that Plaintiff presented a "billing error" within the meaning of the FCBA.  Neither assertion has any basis in the record.

Discovery has also established that Plaintiff's purported "billing error" allegations, so closely examined by the Court of Appeals, are unsupported.  In fact, most of them either were not presented to FIA, or they are otherwise belied by the very documents Plaintiff and his wife signed *before* they examined the Membership Kit ("Kit").  Indeed, the only "facts" Plaintiff provided to FIA for its investigation were: (1) certain fees were not covered in the presentation; (2) the membership contained limitations and/or inclusions not revealed in the presentation; (3) there were condo clean up fees and "other added charges"; (4) the prices for a "packages" included airfare; and (5) there were a limited number of hotels in Mississippi and Louisiana.   (*See* Docket Entry ("D.E.") 84, Ex. H.)

---

[1]      *Rigby v. FIA Card Servs., N.A.*, 490 Fed. App'x 230 (11th Cir. Ala. 2012) ("*Rigby*").

However, when these "facts" are compared to the Retail Installment Contract, Membership Application, and Acknowledgment and By-laws Plaintiff provided to FIA, it is clear that the program's features were disclosed before Plaintiff opened the Kit. (*See*, *e.g.*, D.E. 84, Ex. B at ¶ 1 (noting that reservations must be made by the member); ¶ 8 (noting additional dues owed), ¶ 17 (acknowledging that purchase is not "for airfare, hotel and car rentals alone and the savings on those benefits are minimal if any").

Drawing heavily from *Rigby*, Plaintiff also argues for application of the Uniform Commercial Code ("UCC") to two inconsistent theories of "non-acceptance" and "services not delivered." The only "goods" associated with the Outrigger membership came in the form of the Kit, which Plaintiff kept for nearly three months. However, the Kit obtained through discovery makes it abundantly clear that Plaintiff had access to myriad membership services without a username or password. In fact, he reviewed the list of hotels that he could contact "directly" and accessed the internet to obtain information on the vacation "packages" cited in his letter to Grand Design. Thus, the UCC cannot apply to either theory.

If anything, the undisputed record underscores the timeliness and reasonableness of FIA's investigation, its documented inability to find a "billing error," and its willingness to go the extra mile by attempting to procure a refund for Plaintiff through the Visa® chargeback process. Finally, FIA also timely

responded to Plaintiff's complaint filed with the Office of the Comptroller of Currency ("OCC").   Notably, the OCC found no basis for faulting FIA's investigation – an inconvenient fact that Plaintiff relegated to a footnote in his Opposition Brief.

Thus, while the Court of Appeals may have given Plaintiff a pass on his pleadings, this Court should not do likewise with the real and undisputed facts. Discovery has established that Plaintiff's billing dispute was presented with "diplomatic" half-truths about oral representations and the contents of the Kit. Now that discovery has closed, Plaintiff continues to ignore the inconvenient truths, clinging to the notion that his allegations alone are sufficient to defeat summary judgment.   Under Rule 56, they are not.   There is no issue of material fact that, as a matter of law, FIA timely resolved the billing dispute so his FCBA Claim (Count I) should be dismissed.   Accordingly, his negligence and wantonness claims (Count II and III) fail, so they should also be dismissed.

## I.      PLAINTIFF DOES NOT DISPUTE FIA'S UNDISPUTED FACTS.

Plaintiff's Opposition does not dispute any facts set forth in FIA's Statement of Undisputed Facts as required by Local Rule 7.2.   *See Mongham v. Soronen*, 2013 U.S. Dist. LEXIS 25886, *6 (S.D. Ala. Feb. 26, 2013) (failure to identify any disputed facts in movant's brief or its proposed determinations of findings of fact is "an admission that no material factual dispute exists") (citing S.D. Ala. 7.2(b)); *see*

*also Postell v. Ryder Truck Rental, Inc.*, 2013 U.S. App. LEXIS 5168, **7-8 (11th Cir. Mar. 15, 2013) (affirming district court's grant of summary judgment and finding that plaintiff's failure to file response to defendant's statement of undisputed facts deemed all facts admitted). Accordingly, *all* of FIA's undisputed facts should "be considered an admission that no material factual dispute exists," and Plaintiff's claims should be dismissed on this basis alone. S. D. Ala. R. 7.2.

## II.    FIA'S COMPLIANCE WITH THE FCBA REMAINS UNDISPUTED.

### A. Plaintiff Is Judicially Estopped From Challenging the Timeliness of FIA's Investigation.

In *Rigby,* the Court of Appeals correctly noted that "Rigby does not dispute that [FIA] conducted an investigation of his claim and resolved his claim within the statutory deadline." *Rigby*, 490 Fed. App'x at 236. (D.E. 39.)[2] Plaintiff now

---

[2]      Plaintiff incorrectly cites *Rigby* as the "law of the case," a doctrine which provides that: "A decision of a legal issue or issues by an appellate court . . . must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless [1] the evidence in a subsequent trial was substantially different, [2] controlling authority has since made a contrary decision of the law applicable to such issues, or [3] the decision was clearly erroneous and would work a manifest injustice." *Vintilla v. U.S.*, 931 F.2d 1444, 1447 (11th Cir. 1991) (noting that the "law of the case applies only where there has been a final judgment") (citation omitted). The Court of Appeals held that Plaintiff had pleaded sufficient facts to withstand a motion to dismiss pursuant to Rule 12(b)(6) – not that Plaintiff was entitled to summary judgment. *See Cliatt v. Phenix City,* 2008 U.S. Dist. LEXIS 103766, *10 (M.D. Ala. Dec. 23, 2008) (explaining different standards govern a motion to dismiss and a motion for summary judgment and that motions to dismiss consider the "face of a complaint" whereas "on a motion for summary judgment, the Court deals with undisputed facts and with the application of the law to those facts"). *See also Gulf Offshore Logistics,*

takes a contrary position, characterizing FIA's investigation as having been conducted "indefinitely."  The doctrine of judicial estoppel precludes him from flip-flopping on such a critical point.  *See Smith v.  Alabama*, 996 F. Supp. 1203, 1208 (M.D. Ala. 1998) (explaining that "[j]udicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position") (citation omitted).  *See also Sumner v. Michelin North America, Inc.,* 966 F. Supp. 1567, 1571 (M.D. Ala. 1997) (noting that "[t]he doctrine is intended to prevent a litigant from 'playing fast and loose with the courts'") (citation omitted).

### B.    FIA Timely Acknowledged, Investigated and Responded to Plaintiff's May 28 Dispute.

To the extent that the Court is inclined to review the timeliness issue, the record makes clear that FIA:  (a) sent Plaintiff a written acknowledgement of his May 28 dispute on June 1 – well within Regulation Z's 30-day time frame, 12 C.F.R. § 226.13(c)(1);  (b) investigated his claim when he first presented it on May 28 and resolved it by June 2 – also within Regulation Z's 90-day resolution requirement, 12 C.F.R. § 226.13(c)(2); and (c) sent Plaintiff a letter setting forth

---

*LLC v. Bender*, 2010 U.S. Dist. LEXIS 10908, \*\*6-7 (S.D. Ala. Feb. 9, 2010) (noting that Rule 12(b)(6) dismissals employ a "very high burden" and summary judgment motions are a "very different burden").  The Court of Appeals' decision based on pleadings cannot be properly called the law of the case for summary judgment purposes.

the reasons why his dispute was not a billing error, pursuant to 12 C.F.R. §

226.13(f)(1).  Thus, there can be no genuine issue of material fact that FIA timely

complied with the FCBA.

### C.   FIA Timely Acknowledged, Investigated and Responded to Plaintiff's "Reasserted" Dispute of June 2 Even Though It Had No Obligation to Do So.

As stated in FIA's initial Memorandum, Plaintiff's June 2 dispute, which

FIA submitted to Grand Design through the chargeback process was a "reasserted"

dispute for the same charge, with the same merchant, for the same service, which

FIA had no obligation to investigate.   (D.E. 84 at 14.)   Nevertheless, FIA

acknowledged receipt of the dispute in writing on June 10 – again within 30 days.

12 C.F.R. § 226.13(c)(1).  That letter referred to the previous investigation, and

FIA expressly noted its inability to "determine that a billing error occurred, and as

such [Plaintiff's] dispute was resolved."[3]    (D.E. 84, Ex. R.)  Thus, this letter

undermines Plaintiff's assertion that FIA had determined that there was a billing

error.  In fact, FIA determined just the opposite and confirmed it in writing.

FIA then presented the dispute directly to Grand Design through the Visa®

card association chargeback process, after which Grand Design rebutted Plaintiff's

dispute and refused to issue a refund on the grounds that Plaintiff had signed a

contract with a no-cancellation/no-rescission clause, his membership had been

---

[3]    FIA reiterated its inability to find a billing error in its letter of August 12,
2010.  (D.E. 84, Ex. I.)

activated, and he retained possession of the Kit. On July 21, again within two complete billing cycles, 12 C.F.R. § 226.13(c)(2), FIA sent Plaintiff a letter setting forth the reasons why his dispute was not a billing error, pursuant to 12 C.F.R. § 226.13(f)(1). Thus, FIA timely complied with the FCBA, for *both* disputes.[4]

### D.   Plaintiff Accepted the Travel Club Services and They Were Delivered in Accordance with the Contract.

Plaintiff's "billing error" assertion hinges on two inconsistent theories: (i) he did not accept the membership benefits and then, after having not accepted them, (ii) the membership services were never delivered. Neither theory is supported by the record.

### (i)   Plaintiff Accepted the Travel Club Services.

Plaintiff's "non-acceptance" theory draws heavily from the Court of Appeals' rationale, based on the *allegations,* "if true," that the membership was comprised of "goods and services" and, as such, was a "hybrid sale/service" for which the court looked to the UCC for guidance. Under Alabama's UCC:

> "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as

---

[4]     Plaintiff's August 3 dispute for "services not received" due to lack of a username and password could not under any circumstances be a billing error. It was presented more than 60 days after he received his first account statement.

> described in the section on goods to be severed from realty (Section 7-2-107).

Ala. Code § 7-2-105(1).

The Kit plainly shows that the membership services are not "goods;" rather, they are travel benefits for assorted hotel, vacation, golf, recreation and ski reservations services, complimentary concierge services, and vacation packages posted on the internet at www.travelservicesdeals.com.  Outrigger's representative went so far as to say that Plaintiff "purchased to get quotes right away."[5]  (D.E. 84, Ex. L.)  These services can hardly be called "goods," so the UCC has no bearing on the analysis here.

---

[5]     In his Reply Memorandum in Support of his Motion for Partial Summary Judgment, Plaintiff does not dispute these facts, but he asks this Court to disregard them because they do not comprise the information he provided to FIA during the dispute process.   These facts consist of the Outrigger deposition testimony, contents of the Kit, and Grand Design Affidavit; yet in his Opposition here, Plaintiff asks the Court to consider as "facts" Mrs. Rigby's deposition testimony about specific representations made at the Grand Design sales presentation.  For example, on page 3 of his Opposition,  Plaintiff recites the deep discounts offered for condominiums and cruises, benefits for "friends and family," and cancellation-related discussions.  Plaintiff did not present *any* of these "facts" to FIA at any point in the dispute process.  Plaintiff's Complaint likewise contains "facts" that were never presented to FIA during the dispute process so they should also be disregarded.  (*See* D.E. 1 at ¶ 11A-E.)  Plaintiff cannot stand on these facts to avoid summary judgment.  *See Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989) ("If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor.").  Moreover, to the extent that Plaintiff's reliance on these extrinsic "facts" contradicts the positions he took in his own motion for partial summary judgment, he is precluded from relying on them here.  *See Smith v. Alabama*, 996 F. Supp. at 1208; *Sumner,* 966 F. Supp. at 1571.

The only "goods" that Plaintiff arguably received consisted of  the Kit and its contents, all of which Plaintiff unquestionably "accepted" and kept for nearly three months – well outside the timeframe in which he was obligated to submit his billing dispute.   Plaintiff's "non-acceptance" theory should therefore be disregarded because it has no support in the record.

### (ii)    The Services Were Delivered to Plaintiff Through the Kit.

The Court of Appeals found that the "username and password…provided the only way to access the membership benefits,"[6] so "taken as true" such facts would establish that the membership was never "delivered."   *Rigby*, 490 Fed. App'x at 235.   The record, however, belies such allegations because the username and password were not the "only way" to access the membership services.  The Kit had telephone numbers "plastered all over" it.  (D.E. 84, Ex. L.)  It instructed Plaintiff to contact hotels "directly."  (D.E. 84, Ex. HH at 5.)  A "Special Request" form was included for destinations not listed in the Kit.  (D.E. 84, Ex. GG.)  The Kit provided a website, www.travelservicesdeals.com, which required *no* username or password in order to view the various available vacation packages.

---

[6]    Even though he had the Kit for 26 days before he submitted his written dispute to FIA, Plaintiff did not mention non-delivery.  In fact, the first time he ever mentioned the lack of username and password was August 3, when he received the results of the chargeback, which was more than 60 days after he received his first account statement.

Moreover, since the Kit on its face does not provide specifics of the vacation packages that Plaintiff complained of, such as destinations or pricing, it is reasonable to infer that Plaintiff accessed the website that requires no username or password to obtain information on vacation packages that he complained about to Grand Design.    Thus, it is undisputed that services were "delivered," and that Plaintiff's billing dispute with Grand Design was not a "billing error" under the FCBA.[7]

### E.      FIA Did Not Control the Outcome in the Chargeback Process.

Plaintiff improperly conflates FIA's FCBA investigation and the chargeback that FIA attempted on his behalf through the Visa® card association rules.

"A 'chargeback' is the return of a transaction from the [credit card] Issuer to the Acquirer." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 164-65 (3d Cir. 2008).  The "Acquirer" is the bank for merchants that agrees to accept certain credit cards as payment, *id.* at 164, and "Acquirers process those transactions on behalf of the Merchants" for their goods and services.  *Id.* at 165.

---

[7]    Dismissal here is consistent with case law addressing consumer complaints about the quality of services that were never provided.  *See Beaumont v. Citibank N.A.,* 2002 U.S. Dist. LEXIS 5276, *4 and **10-12 (S.D.N.Y. Mar. 28, 2002) (customer's request to cancel investment group membership  not a billing error within the meaning of the FCBA where customer complained about the quality of services and even where customer alleged the merchant "never provided the product(s) and services that it promised").  The Court of Appeals did not mention *Beaumont* in its determination, presumably because it viewed the allegations here as giving rise to a hybrid sales/services transaction, which the facts show is not the case here.

The process allows for disputed charges to be submitted by the Issuer to the Acquirer through chargeback and representment procedures in accordance with "risk allocation judgments made by [the credit card association]" such as Visa® or MasterCard.®  *Id.*  "A 'representment' is the Issuer's or its agent's challenge to a chargeback; it involves resubmission of its response to the chargeback with additional information."  *Id.* at 165 n.2.  This is the process that FIA followed on behalf of Plaintiff.   Moreover, Visa® is the ultimate arbiter of disputes between merchants and card holders, and both parties must accept Visa's final decision.  *See*  http://usa.visa.com/download/merchants/chargeback-management-guidelines-for-visa-merchants.pdf,_at_12 (last visited July 19, 2013) ("In arbitration, *Visa decides which party is responsible for the disputed transaction.*  In most cases, *Visa's decision is final and must be accepted by both the card issuer and the acquirer.*   During arbitration, Visa reviews all information/ documentation submitted by both parties to determine who has final liability for the transaction."). (emphasis added.)  Thus, the chargeback process completely undermines Plaintiffs' argument that FIA repeatedly "reversed" decisions to credit Plaintiff's account.  In fact, FIA does not, and cannot, control the outcome or force a refund.

Plaintiff's theories are driven by a fundamental misunderstanding of the FCBA investigative process, or they otherwise evince a deliberate attempt to obfuscate the obvious by conflating an FCBA investigation and the Visa®

"chargeback" process.   The record clearly shows that FIA conducted a timely and reasonable investigation of Plaintiff's billing dispute, determined that it was not a "billing error," and thereafter separately pursued a chargeback for Plaintiff.

## III.   PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED.

### A.  Plaintiff's Negligence Claim Should Be Dismissed.

Plaintiff is a "consumer" under the FCBA, and under clear Alabama precedent, he is not part of a protected class narrower than the general public.  *See Winberry v. UCB, Inc.*, 697 F. Supp. 2d 1279, 1293 (M.D. Ala. 2010).   Moreover, FIA did not violate the FCBA, so Plaintiff  has no negligence *per se* claim.[8]  *See Brantley v. Int'l Paper Co.*, 2009 WL 2601390, *4 (M.D. Ala. Aug. 21, 2009) (citing *Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003)).   Therefore, FIA should be awarded summary judgment on the negligence claim.

### B.  Plaintiff Has Abandoned His Wantonness Claim.

Lastly, Plaintiff's Opposition does not rebut FIA's argument that his wantonness claims should be dismissed.  It is well-settled that failure to oppose a motion for summary judgment on a claim is considered an abandonment of that

---

[8]    Plaintiff has not alleged or provided evidence of any negligence by FIA outside of a negligence *per se* theory by virtue of a purported violation of the FCBA.  This Court has already noted that Plaintiff's negligence claim was made simply to "bolster" his FCBA claim and that Plaintiff alleged no duty violated by FIA outside of FIA's duties under the FCBA.  *See* D.E. 30 at 13.

claim.  *See Eastern Shore Marine, Inc. v. Platt*, 2009 U.S. Dist. LEXIS 14647, **5-6 (S.D. Ala. Feb. 23, 2009) ("The onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)); *Fischer v. Fed. Bureau of Prisons*, 349 Fed. App'x 372, 375 (11th Cir. 2009) (claim not addressed in response to motion for summary judgment deemed waived); *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303 (M.D. Ala. 2010) (same).   Since Plaintiff has not presented any argument in opposition to this aspect of FIA's motion, FIA is entitled to summary judgment and dismissal of Count Three.

For the foregoing reasons, and the reasons set forth in FIA initial Memorandum in support of its Motion for Summary Judgment, FIA should be granted summary judgment on all of Plaintiff's claims.

This, the 23rd day of July, 2013.

Respectfully submitted,

*/s/Kathryn Dietrich Perreault*
John David Collins
Kathryn Dietrich Perreault
Maynard Cooper & Gale PC
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
Telephone:  205-254-1104
Facsimile:   205-714-6404
jcollins@maynardcooper.com

14

and

Kathleen H. Dooley
*Admitted pro hac vice*
Angie H. Zimmern
*Admitted pro hac vice*
McGuireWoods LLP
201 North Tryon Street, Suite 3000 (28202)
Post Office Box 31247
Charlotte, North Carolina 28231
Telephone:  704.343.2000
Facsimile:   704.343.2300
kdooley@mcguirewoods.com
azimmern@mcguirewoods.com

*Attorneys for Defendant FIA Card Services, N.A.*

## CERTIFICATE OF SERVICE

The undersigned states that a copy of the foregoing was served this date via

ECF/PACER upon the following:

Kenneth J. Riemer
Underwood & Riemer, P.C.
166 Government Street, Suite 100
Mobile, Alabama 36602

/s/Kathryn Dietrich Perreault
Kathryn Dietrich Perreault

Dated:  July 23, 2013